UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT COYKENDALL III,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

Hon. Hala Y. Jarbou

Case No. 1:20-cv-769

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that the Commissioner's decision be affirmed.

## STANDARD OF REVIEW

The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process. *Tucker v. Commissioner of Social Security*, 775 Fed. Appx. 220, 225 (6th Cir., June 10, 2019). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her

decision and whether there exists in the record substantial evidence supporting that decision. *Id.* at 224-25. Substantial evidence is more than a scintilla, but less than a preponderance, and constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Livingston v. Commissioner of Social Security*, 776 Fed. Appx. 897, 898 (6th Cir., June 19, 2019).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *Biestek v. Commissioner of Social Security*, 880 F.3d 778, 783 (6th Cir. 2017). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *Moruzzi v. Commissioner of Social Security*, 759 Fed. Appx. 396, 402 (6th Cir., Dec. 21, 2018). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *Luukkonen v. Commissioner of Social Security*, 653 Fed. Appx. 393, 398 (6th Cir., June 22, 2016).

## BACKGROUND

Plaintiff was 29 years of age on his alleged disability onset date. (ECF No. 10-6, PageID.274). He possesses an eighth-grade education and worked previously as an industrial groundskeeper, dairy farm laborer, and laborer. (ECF No. 10-2, 10-3, PageID.57, 85). Plaintiff applied for benefits on April 20, 2018, alleging that he had been disabled since July 5, 2015, due to post-traumatic stress disorder (PTSD),

obsessive-compulsive disorder, major depressive disorder, personality disorder, opioid disorder, anxiety, social phobia, and addiction.   (ECF No. 10-6, 10-7, PageID.274, 302).

Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ).   Following an administrative hearing, ALJ William Reamon, in an opinion dated June 27, 2019, determined that Plaintiff did not qualify for disability benefits.   (ECF No. 10-2, 10-3, PageID.46-59, 75-126).   The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision.   (ECF No. 10-2, PageID.37-41).   Plaintiff later initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability.   *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).   If the Commissioner can make a dispositive finding at any point in the review, no further finding is required.   *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).   The regulations also provide that if a claimant suffers from a non-exertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity.   *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff bears the burden to demonstrate he is entitled to disability benefits and he satisfies his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A). While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *O'Neal v. Commissioner of Social Security*, 799 Fed. Appx. 313, 315 (6th Cir., Jan. 7, 2020).

The ALJ determined that Plaintiff suffers from: (1) anxiety; (2) depression; (3) substance addiction disorder; (4) post-traumatic stress disorder (PTSD); and (5) borderline intellectual functioning, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (ECF No. 10-2, PageID.49-52).

With respect to Plaintiff's residual functional capacity, the ALJ found that Plaintiff retained the ability to perform work at all exertional levels subject to the following limitations: (1) he can understand, remember, and carry out simple, routine, repetitive 1-3 step tasks; (2) he should avoid any interaction with the

general public; and (3) he can tolerate occasional co-worker and supervisor interaction.  (*Id.*, PageID.52).

The ALJ found that Plaintiff could not perform his past relevant work at which point the burden shifted to the Commissioner to establish by substantial evidence that there exists in the national economy a significant number of specific jobs which Plaintiff can perform, his limitations notwithstanding.  *O'Neal*, 799 Fed. Appx. at 316.  In satisfying this burden, the ALJ may rely on a vocational expert's testimony.  *Ibid.*

In this case, a vocational expert testified that there existed approximately 305,000 jobs in the national economy that an individual with Plaintiff's RFC could perform, such limitations notwithstanding.  (ECF No. 10-3, PageID.120-24).  This represents a significant number of jobs.  *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").  Accordingly, the ALJ concluded that Plaintiff was not entitled to benefits.

## I.     Medical Source Opinion

On April 15, 2019, Mark Kole, M.A., L.L.P., completed a form regarding Plaintiff's mental residual functional capacity.  (ECF No. 10-11, PageID.714-16).  Kole reported that Plaintiff suffers from numerous significant and presumably work-preclusive limitations.  (*Id.*).  The ALJ discounted Kole's opinions finding them "unpersuasive" and "inconsistent with other substantial evidence."  (ECF No. 10-2,

PageID.56). Plaintiff argues that he is entitled to relief because the ALJ's assessment of Kole's opinions is not supported by substantial evidence. Because Plaintiff filed his applications after March 27, 2017, the ALJ evaluated the medical opinions pursuant to 20 C.F.R. § 416.920c. This regulation provides that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," even an opinion from a treating source. 20 C.F.R. § 416.920c(a).

Instead, the ALJ is required to articulate his determination of the persuasiveness of a medical opinion "in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id.* § 416.920c(b)(1). These factors include: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors which tend to support or contradict the opinion. *Id.* § 416.920c(1)-(5). The ALJ must explain her consideration of the supportability and consistency factors, but absent circumstances not present here, is not required to explain how the remaining factors were considered. *Id.* § 416.920c(b)(2), (3). The regulations define "supportability" and "consistency" as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

    (2)    Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id.* § 416.920c(c)(1)-(2).

An examination of Kole's opinions and the evidence of record demonstrates that the ALJ's assessment is supported by substantial evidence. Kole reported that Plaintiff was "unable to meet competitive standards" in the following areas of functioning: (1) maintain attention for two-hour segment; (2) sustain an ordinary routine without special supervision; (3) complete a normal workday and workweek without interruptions from psychologically-based symptoms; and (4) perform at a consistent pace without an unreasonable number and length of rest periods. (ECF No. 10-11, PageID.714). Kole also reported that Plaintiff was "seriously limited" in the following areas: (1) remember work-like procedures; (2) understand and remember very short and simple instructions; (3) carry out very short and simple instructions; (4) make simple work-related decisions; (5) accept instructions and respond appropriately to criticism from supervisors; and (6) deal with normal work stress. *(Id.*, PageID.714-15). Kole reported that Plaintiff experiences "marked" limitation in his ability to (1) understand, remember, or apply information; and (2) maintain concentration, persistence, or pace. (*Id.*, PageID.715). Finally, Kole reported that Plaintiff would be absent from work "more than four days per month" to participate in "treatment." (*Id.*, PageID.715).

At the outset, the Court notes that Kole failed to identify any specific functional limitations that Plaintiff allegedly experiences. Instead, Kole simply referenced nebulous and subjective terms like "seriously limited" and "unable to meet competitive standards." Such labels on a fill-in-the-box form, however, fail to articulate any specific functional limitations which are inconsistent with the ALJ's RFC assessment. This alone is a sufficient basis to uphold the ALJ's determination. *See, e.g., Meyers v. Commissioner of Social Security*, 2020 WL 923413 at *6 (W.D.N.Y., Feb. 26, 2020) (ALJ properly afforded "little weight" to selections on a fill-in-the-box form that utilized terms such as "no useful ability to function" because such were "vague and unspecific"); *Green v. Saul*, 2020 WL 1227895 at *4 (E.D. Cal., Mar. 13, 2020) (ALJ properly afforded "little weight" to selections on a fill-in-the-box form which were "unspecific in terms of Plaintiff's functional capacity"). Nevertheless, the Court will assess the other rationale for discounting Kole's opinions.

Plaintiff began treatment at Allegan Community Mental Health in March 2014. (ECF No. 10-13, PageID.772). Plaintiff reported that he was experiencing "difficulty in getting out of his home" and that he "cannot be in crowds without getting real nervous." (*Id.*). The following month, Plaintiff began meeting with Mark Kole. (*Id.*, PageID.789-91). Plaintiff was subsequently diagnosed with PTSD, obsessive-compulsive disorder, major depressive disorder, and personality disorder for which medication was prescribed. (*Id.*, PageID.797, 802). Subsequent treatment notes indicate that Plaintiff's "mood/affect," "thought process orientation,"

and "behavior/functioning" were consistently characterized as "unremarkable." (ECF No. 10-9, 10-13-10-16, PageID.405-532, 802-1203). Treatment notes likewise indicate that Plaintiff's medications were well-tolerated and helping. (ECF No. 10-9, 10-13, 10-14, 10-15, 10-16, PageID.474, 500, 856, 905, 1017, 1077, 1114, 1165).

Unbeknownst to Kole, however, Plaintiff was also abusing heroin and opioids. Kole did not learn of this information for more than two years. (ECF No. 10-9, 10-16, PageID.507, 1125-33). Plaintiff subsequently began substance abuse treatment at Victory Clinical Services in June 2017. (ECF No. 10-10, PageID.539). Plaintiff declined, however, to provide Allegan Community Mental Health with information regarding his substance abuse treatment because he was concerned that providing such information might make it less likely that Kole would "help[] Plaintiff get [his] Social Security." (ECF No. 10-9, 10-11, PageID.435, 707). As Defendant notes, it appears that Plaintiff's primary goal in seeking treatment with Allegan Community Mental Health was simply as a means to facilitate obtaining Social Security benefits. (ECF No. 10-9, 10-11, 10-14, 10-15, 10-16, PageID.504, 524, 687, 689, 695, 703, 705, 946, 958, 982, 1041, 1049, 1051, 1141, 1147). Treatment notes from Victory Clinical Services indicate that Plaintiff reported to them that he was only experiencing "mild to moderate mental health issues," which were "currently managed" through Allegan Community Mental Health. (ECF No. 10-17, PageID.1223).

Moreover, while Plaintiff reported to Kole that he could not exit his residence or go out in public, Plaintiff testified at the administrative hearing that he was perfectly capable of leaving his house to regularly attend the methadone clinic and

to also meet others in "the city" to facilitate drug transactions. (ECF No. 10-3, PageID.101-14). As Defendant further notes, care providers treating Plaintiff's physical ailments consistently reported that Plaintiff's mental status was unremarkable. (ECF No. 10-10, PageID.566, 573, 577, 582, 588, 616).

In support of his decision, the ALJ noted that Kole's "statements and opinions are not well supported by medically acceptable clinical findings and are inconsistent with other substantial evidence such as mostly unremarkable mental status examination findings and the claimant's testimony regarding his ability to socialize to the extent that he can complete drug deals on a regular basis." (ECF No. 10-2, PageID.56). The ALJ further observed that Kole's "opinions are conclusory and appear to be based heavily on the claimant's self-reports of symptoms rather than medically acceptable clinical findings." (*Id.*). In sum, the ALJ analyzed Kole's opinions pursuant to the proper standard and his assessment is supported by substantial evidence. This argument is, therefore, rejected.

## II.    Plaintiff's Residual Functional Capacity

A claimant's RFC represents the "most [a claimant] can still do despite [his] limitations." *Sullivan v. Commissioner of Social Security*, 595 Fed. Appx. 502, 505 (6th Cir., Dec. 12, 2014); *see also*, Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents his ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an

equivalent work schedule"). The ALJ found that Plaintiff retained the ability to perform work subject to several non-exertional limitations.

The ALJ is tasked with determining a claimant's RFC. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c). While the ALJ may not "play doctor" and substitute his own opinion for that of a medical professional, the ALJ is not required to tailor his RFC assessment to any particular opinion or item of medical evidence. *See, e.g., Poe v. Commissioner of Social Security*, 342 Fed. Appx. 149, 157 (6th Cir., Aug. 18, 2009). Instead, the ALJ is "charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of her residual functional capacity." *Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004). This is precisely what the ALJ in this matter did and the ALJ's RFC assessment is supported by substantial evidence as the discussion above demonstrates. In support of his argument, Plaintiff has failed to identify any error in the ALJ's analysis, but instead simply argues that the ALJ should have weighed and evaluated the evidence differently. This is not grounds for relief, however. Accordingly, this argument is rejected.

### III. The ALJ Properly Assessed Plaintiff's Credibility

At the administrative hearing, Plaintiff testified that he is unable to work because he experiences multiple panic attacks daily, which preclude him from performing any activities. (ECF No. 10-3, PageID.87-88). Plaintiff testified that three to four days each week his condition is so severe that he cannot socialize with anybody. (*Id.*, PageID.91). Plaintiff reported that he experiences "nightmares

every night." (*Id.*, PageID.92). Plaintiff reported that he is unable to follow even simple directions from his mother about how to perform simple tasks around the house. (*Id.*, PageID.95-96). Plaintiff reported that the thought of working would cause him to experience "a massive panic attack." (*Id.*, PageID.119-20). The ALJ found Plaintiff less than fully credible because his subjective allegations were "not entirely consistent with" the evidence of record. (ECF No. 10-2, PageID.53). Plaintiff argues that he is entitled to relief because the ALJ improperly discounted his credibility.

While "pain alone, if the result of a medical impairment, may be severe enough to constitute disability," *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984), a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009).

Instead, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard. First, it must be determined whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's alleged symptoms. *See* Titles II and XVI: Evaluation of Symptoms in Disability Claims, Social Security Ruling 16-3p, 2016 WL 1119029 at *3-4 (S.S.A., Mar. 16, 2016). Next, the intensity and persistence of

the claimant's symptoms are evaluated to determine the extent to which such limit his ability to perform work-related activities. *Id.* at *4-9.[1]

As is also well recognized, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004). But, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Ibid.* It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. *See, e.g., Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) ("[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable").

---

[1] Social Security Ruling 16-3p rescinded Social Security Ruling 96-7p. *Id.* at *1. But the adoption of this new Social Security Ruling did not alter the analysis for evaluating a claimant's subjective statements. Instead, as the Social Security Administration stated, it was simply "eliminating the use of the term 'credibility' [so as to] clarify that that subjective symptom evaluation is not an examination of an individual's character." *Ibid.* As courts recognize, aside from this linguistic clarification, "[t]he analysis under SSR 16-3p otherwise is identical to that performed under SSR 96-7p." *Young v. Berryhill*, 2018 WL 1914732 at *6 (W.D. Ky., Apr. 23, 2018).

As already discussed, the medical evidence does not support Plaintiff's assertion that he suffers such extreme and work-preclusive limitations. Again, Plaintiff does not identify any error in the ALJ's analysis, but rather implores the Court to re-weigh the evidence and reach a different conclusion. As already noted, this the Court cannot do. The ALJ articulated a clear rationale for his findings regarding Plaintiff's subjective allegations and the ALJ's conclusions are supported by substantial evidence. Accordingly, this argument is rejected.

## IV.   Vocational Expert Testimony

Finally, Plaintiff argues that he is entitled to relief because the hypothetical question posed to the vocational expert by the ALJ failed to include all the functional limitations from which he suffers. While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such questions must accurately portray Plaintiff's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996). In response to a question assuming Plaintiff was limited to the extent reflected in the ALJ's RFC, the vocational expert testified that there existed a significant number of jobs which Plaintiff could still perform. The ALJ's RFC determination is supported by substantial evidence and there was nothing improper or incomplete about the hypothetical questions the ALJ posed to the vocational expert. The Court concludes, therefore, that the ALJ properly relied upon the vocational expert's testimony.

## CONCLUSION

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be affirmed.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: December 9, 2021

/s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge